139 So.2d 873 (1962)
Robert L. FLOYD, As Judge of the Circuit Court of the Eleventh Judicial Circuit of Florida, Petitioner,
v.
STATE of Florida ex rel. La Vigne Electric Company, a Florida Corporation, and State of Florida ex rel. Federated Department Stores, Inc., a Florida Corporation, Respondents.
No. 31376.
Supreme Court of Florida.
March 21, 1962.
Rehearing Denied May 1, 1962.
Oscar Rappaport, and Truett & Watkins, Miami, for petitioner.
Welsh, Cornell, Pyszka & Carlton, Miami, for LaVigne Electric Co. and Blackwell, Walker & Gray, Miami, for Federated Department Stores, Inc., respondents.
THOMAS, Justice.
An action was brought in the Circuit Court of the Eleventh Judicial Circuit by Lillian Friedler and her husband against LaVigne Electric Company and Federated Department Stores, Inc., to recover damages for injuries to Lillian Friedler alleged to have been the result of the negligence of the defendants. Eventually the court granted motions for summary judgments in favor of the defendants. These were entered 30 December 1960 and 3 January 1961.
Then the plaintiffs filed a motion for rehearing. Before the motion was called up *874 for argument the trial judge, ex mero motu, set the matters for reargument because after the entry of the judgments he had learned of a decision of the District Court of Appeal, Third District, which indicated that he might have been mistaken in disposing of the litigation by summary judgments instead of submitting the issues to a jury. Purdon et ux. v. Cohen, Fla.App. 1961, 126 So.2d 575.
Subsequent to the arguments the court on 1 March 1961 entered an order setting aside the summary judgments and denying the motions that had been made to enter them.
Afterward the defendants presented to the District Court of Appeal, Third District, their suggestion for a writ of prohibition to preclude the circuit judge from proceeding further.
When the case reached the District Court of Appeal there was no question about the procedure that had been followed culminating in the judgments, nor were the merits of the original controversy under consideration. The question was whether or not the District Court of Appeal should curb further action by the circuit judge on the ground that he would, if he undertook to proceed with the trial of the case, exercise jurisdiction he no longer had. In short, it was the position of the defendants that upon the entry of the summary judgments the circuit judge completely lost control of the case.
A rule nisi was issued by the District Court of Appeal ordering the circuit judge to show cause why the suggestion "should not be granted," and later, the circuit judge having filed no return, the District Court of Appeal held that a prima facie case had been shown and that judgment in prohibition should be awarded. This conclusion was supported by the simple statement that "a trial judge may not grant a petition for rehearing addressed to a summary final judgment. Cf. Morans v. Stang, Fla.App. 1960, 124 So.2d 891." True, the case mentioned bears the statement that the court was unaware of any provision in the rules or other basis for consideration of a motion in the nature of one for rehearing after the entry of a summary judgment and, therefore, concluded that the trial judge properly decided he lacked jurisdiction "to further amend the pleadings subsequent to the entry of summary final judgment." As a basis for this pronouncement the court cited the opinion of the District Court of Appeal, Third District, in Batteiger v. Batteiger, Fla.App. 1959, 109 So.2d 602, in which it was held that except for the correction of clerical errors or mistakes due to oversight or omissions, a chancellor may not enter an amended decree after the elapse of the period for the filing of a petition for rehearing.
For that matter, this court held in Weisberg v. Perl, 73 So.2d 56, that "a petition for a rehearing after summary final judgment [was] unknown and unheard of" in a common law action.
The question whether or not there should be a distinction between the control of a trial judge over a judgment entered in the ordinary case and one entered summarily is now receiving the earnest consideration of this court.[1] It is clear from the last cited case that it was held that the procedure *875 was unknown but it is a bit difficult to understand why the circuit judge having the conviction that a decision of the appellate court released after entry of the summary judgment showed he had erred could not correct the mistake without forcing the defendants to the relatively circuitous route of taking an appeal when in all probability the end result would be the same.
It seems to us now that at best the problem was procedural and did not involve the power of the circuit judge to do as he did even assuming that he was wrong. The thought that a judge has a right to be wrong is not new. But it seems somewhat harsh to say to a trial judge that in attempting to correct a judgment he had concluded was erroneous, during the period he could have so acted had it not been a summary judgment, he had so far exceeded his jurisdiction that he was sapped of all power to go further, or, in other words, that he should be stopped in his tracks.
From our study of relevant decisions of this court on the subject, we think the power of a court to correct the errors in its own judgments is so deep-seated that it cannot be brushed aside because of the lack of provision for rehearing of a judgment summarily entered. Discussions of the inherent power of a court to repair the injury it has occasioned may be found in Masser et al. v. London Operating Co., 106 Fla. 474, 145 So. 72, 79; Hazen v. Smith, 101 Fla. 767, 135 So. 813; Bronson v. Schulten, 104 U.S. 410, 26 L.Ed. 797.
We assumed jurisdiction of the cause because of the reference in Lake v. State, 100 Fla. 373, 129 So. 827, 131 So. 147, to the "well-nigh" universal rule that a court of record, prior to the adjournment of the term or other time fixed in which the judgment becomes final, and in the absence of statutory or constitutional restriction, can control its judgments by setting them aside or reforming them. This principle was reiterated as late as 1959, five years after the decision in Weisberg v. Perl, supra, by the District Court of Appeal, First District, in the case of State of Florida v. Schaag, and State of Florida v. Drossos, Fla.App. 1959, 115 So.2d 783, which referred to Lake v. State, supra.
As our study of the opinion in Weisberg v. Perl, supra, continues, the merits of the distinction between procedure following the entry of summary judgments and ordinary judgments wane because of the thought that a trial court should control its own judgments, until its jurisdiction is lost by the passage of time, so that mistakes such as the one the trial judge was convinced he had made in this case can be corrected.
In all events, we do not find in the decisions a basis for prohibiting the circuit judge. The approach to such a conclusion appears to have been negative rather than positive. In the Weisberg case it was said that the procedure of rehearing of a summary judgment was unknown or "unheard of"; in the Marans case it was commented that there was no rule or basis for considering a motion to rehear a case in which a summary judgment had been entered.
We have undertaken no academic discussion about the difference between a rehearing on motion of the losing litigant and a rehearing by the judge ex mero motu. The circuit judge recited that he acted sua sponte and we accept that statement as accurate. The vital point in the case is whether the circuit judge could disturb his own judgment inasmuch as he had discovered that he had erred or whether he was stripped of his power over the judgment because it was a summary one. We must take the position that he did not lose control simply because it was summary and we recede from any statement to the contrary in Weisberg v. Perl, supra.
We have not overlooked the comparatively recent decision of this court rendered in Counne v. Saffan, 87 So.2d 586, but what we have announced here does not collide with it. The court there held, in effect, that *876 inasmuch as there was no rule providing for an attack, by petition for rehearing, on a summary judgment, the filing of one would not extend the time for taking an appeal and the period would, therefore, be computed from the date of the final judgment.
We summarize: There was sufficient conflict among the cases cited to justify review by this court under the provisions of Sec. 4(2) of Art. V of the Constitution, F.S.A.; there was insufficient basis to bar the circuit judge from further dealing with the litigation lodged in his court.
So the judgment of the District Court of Appeal is quashed.
ROBERTS, C.J., and TERRELL, THORNAL and HOBSON (Retired), JJ., concur.
DREW and O'CONNELL, JJ., dissent.
DREW, Justice (dissenting).
In view of the trial court's own denomination of its order in this case as one entered "sua sponte," and the settled rule that a petition for rehearing cannot under existing practice be addressed to a summary judgment,[1] the issue presented by the petition for writ of prohibition in this cause was whether the court under the circumstances could on it own motion set aside the summary judgments theretofore granted on the ground that the rule of a subsequent decision[2] required a jury trial of the cause, or compelled a contrary conclusion as to the legal propriety of a summary judgment for defendant in the case.
Even if the district court's negative disposition of that issue can be termed a "direct conflict"[3] (and I don't think it can) with the decision to which we are referred,[4] I think this case must be controlled and the decision of the district court sustained by a long standing principle of the general law of judgments clearly pronounced by two of the most respected authorities on the subject:
"In those jurisdictions where terms have been abolished and the court sits continuously for the transaction of any business that properly may come before it, the common-law rule as to the finality of judgments, based upon the sitting of the court in terms, has no application. Under such circumstances judgments or decrees become operative from the time they are rendered or entered and at once become final and irrevocable. They are not subject to vacation or modification as they were during the term at common law. This does not mean, of course, that the court loses control entirely of the judgment, but the situation is much the same as that existing at common law after the term, except as modified by statute, leaving it only its inherent powers in case of judgments void or irregularly or inadvertently entered. * * *" Freeman on Judgments, Vol. 1, 5th Ed., Sec. 201.
"The power to vacate judgments, on motion, is confined to cases in which the ground alleged is something extraneous to the action of the court or goes only to the question of the regularity of its proceedings. It is not intended to be used as a means for the court to review or revise its own final judgments, or to correct any errors of law into which it may have fallen. That a judgment is erroneous *877 as a matter of law is ground for an appeal, writ of error, or certiorari, according to the case, but it is no ground for setting aside the judgment on motion * * *." (Emphasis supplied) Black on Judgments, Vol. I, 2nd Ed., Sec. 329.
These texts collate authorities of other jurisdictions on the point, and there appears to be no real conflict in the cases. Except for those decisions relating expressly to alteration of judgments while they remain "in the bosom" of the court during term time, where terms of court may have such effect,[5] I find no Florida decision sustaining a judicial revisory power over final judgments broader than that required to declare void that which is by its nature a nullity,[6] or to correct errors to make the record speak the truth.[7] The right of reconsideration upon petition or motion of the parties, like the right of appellate review, is one vested in the litigant, and the effect of post judgment proceedings as suspending rendition of judgment under our rules is expressly conditioned upon proper and timely instigation of such proceedings by the parties,[8] upon the theory that in that event the judicial labor is not completed until disposition thereof. A complementary ex parte power or jurisdiction in the court to set aside judgments because of a change of mind or opinion, absent legislative specification or regulation, would have an obviously disquieting effect on orderly procedure in the administration of justice.[9]
While the rule that errors of law must be corrected by appeal[10] seems superficially to require the method of indirection where the direct might be simpler, the soundness of such a rule has been repeatedly attested in the history of its application and petitioners have shown no overpowering necessity for its abrogation in this case.
The writ of certiorari should, in my opinion, be discharged and the writ issued by the district court left in full force and effect.
O'CONNELL, J., concurs.
NOTES
[1] RULE 2.8. MOTIONS FOR NEW TRIALS; REHEARING; AMENDMENTS OF JUDGMENTS.

(a) Jury and Non-Jury Cases. A new trial may be granted to all or any of the parties and on all or a part of the issues. On a motion for a rehearing of a summary judgment or of matters heard without a jury, the court may open the judgment if one has been entered, take additional testimony and enter a new judgment.
(b) Time for Motion. A motion for new trial, or a motion for rehearing in matters heard without a jury or a rehearing of any motion for judgment provided for by these rules, shall be served not later than 10 days after the rendition of verdict, or the entry of a summary judgment.
Adopted by the Supreme Court 20 March 1962, effective 1 July 1962.
[1] Weisberg v. Perl, Fla. 1954, 73 So.2d 56; Morans v. Stang, Fla.App. 1960, 124 So.2d 891.
[2] Purdon et ux. v. Cohen, Fla.App. 1961, 126 So.2d 575.
[3] Sec. 4(2), Art. V, Florida Constitution.
[4] Lake v. State, 1930, 100 Fla. 373, 129 So. 827, 131 So. 147, containing a statement of the general common law rule as to control of judgments during the term of court at which they are entered. Cf. 49 C.J.S. Judgments § 287.
[5] See Ramagli Realty Co. v. Craver, Fla. 1960, 121 So.2d 648, for the effect of Rule 1.6(c), Florida Rules of Civil Procedure, 30 F.S.A., as follows:

"(c) Unaffected by Expiration of Term. The period of time provided for the doing of any act or the taking of any proceeding shall not be affected or limited by the continued existence or expiration of a term of court. The continued existence or expiration of a term of court in no way affects the power of a court to do any act or take any proceeding in any civil action which is and has been pending before it."
Judgments in criminal causes such as cited in the majority opinion in the case at bar, State of Florida v. Drossos, Fla. App. 1959, 115 So.2d 783, are, of course, unaffected by the quoted rule.
[6] 19 Fla.Jur., Judgments, Sec. 383, and cases cited.
[7] Rule 1.38, Fla.Rules Civ.Proc., 30 F.S.A. See Wheeler Fertilizer Co. v. Rogers, Fla. 1950, 49 So.2d 83, at p. 87 for distinction between clerical and judicial error.
[8] Rule 1.3, Fla.App.Rules, Vol. 3, F.S. 1959, 31 F.S.A.
[9] See Ramagli Realty Co. v. Craver, note 5, supra.
[10] "* * * Similarly, a judicial decree will not be set aside by reason of a change in the law, resulting from a subsequent decision by a higher court reaching a contrary conclusion. The reason for the rule is that there must be an end to litigation, and it is the policy of the law to prohibit, as far as possible, the further contest of an issue once judicially decided and to accord finality to judgments. * * *" 49 C.J.S. Judgments § 272.

Cf. Plymouth Citrus Prod. Co-Op. v. Williamson, Fla. 1954, 71 So.2d 162.